## In Re Anonymous No. 27 D.B. 85

Disciplinary Board Docket No. 27 D.B. 85.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

TUMOLO, *Member*, August 15, 1986—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF THIS PROCEEDING

[  ], Esq. (respondent), is a 52-year-old sole practitioner who maintains his law office in his home in [  ] County, Pennsylvania. He was admitted to the courts of this Commonwealth on April 25, 1972.

On April 3, 1985, the Office of Disciplinary Counsel filed a petition for discipline alleging violations of four Disciplinary Rules: D.R. 9-102(A), commingling of clients' funds; D.R. 9-102(B)(4), failing to deliver the client funds held by the lawyer on behalf of the client; D.R. 1-102(A)(3), engaging in illegal conduct involving moral turpitude; and, D.R.1-102(A)(4), engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Hearing committee [  ][1] conducted a hearing on the alleged violations on August 6, 1985. That committee recommended a public censure with a one-year period of supervision. The Office of Disciplinary Counsel filed a brief on exceptions requesting that respondent be suspended for a period of time which would require that he petition for reinstatement.

The matter came before the entire board for review on July 1, 1986.

## II. SUMMARY OF CASE

Respondent initially began his practice of law under the tutelage of the late [A], Esq. He testified that [A] had instructed him that the only time an escrow account is necessary is when an attorney is handling an estate. Respondent did not handle many personal injury cases, and on those occasions when

---

1. Chairperson [  ], Esq., and members [  ], Esq., and [  ], Esq.

he did, his practice was to place the settlement checks in his personal account, and after the check cleared, to write checks for the appropriate shares to his client and himself. This practice continued after [A]'s death.

In August of 1982, respondent was retained by [B] to represent her in connection with a personal injury claim against [C] Bus Lines, Inc. The contingency fee agreement was for respondent to receive one-third of the amount recovered.

Long before being retained by [B], respondent had maintained an open account with [D] Company for the purchase of law books. The amount owed had varied, but by early 1984, respondent was indebted to [D] in the amount of $1,207.59. [E], Esq., advised respondent that he represented [D] and that the overdue amount had to be paid. At almost the same time, on February 28, 1984, respondent reached a settlement with [C] Bus Lines on the [B] claim, which resulted in [F] Insurance Companies issuing a draft in the amount of $1,935.49 payable to [B] and respondent. Respondent sent the draft to [B] for signature.

Shortly thereafter, on March 12, 1984, respondent was served with a complaint in assumpsit by [D] for failure to pay the amount owed on law books. Respondent did not file an answer because he intended to settle the matter.

While respondent was waiting for the [B] draft to be returned to him, signed by his client, he was admitted to the hospital suffering from diabetes and chronic obstructive pulmonary disease. Respondent was discharged from the hospital on April 3, 1984, but by that time he had misplaced the draft that [B] had returned to him. On April 16, 1984, after care-

fully going through his mail, respondent located the draft. He followed his normal procedure of depositing these funds in his personal checking account, and fully intended to send [B] a check for the amount she was owed. However, a default judgment was entered by [D] against respondent on the delinquent book payments. At this point no execution had been issued by [D], but on April 24, 1984, respondent was again hospitalized at the Hospital of [ ] for chronic obstructive pulmonary disease. While respondent was in the hospital, the bank was served a writ of execution in connection with the [D] judgment attaching respondent's personal account. Counsel for [D] refused to work out any payment schedule, and the garnished funds were delivered to [D] in satisfaction of their execution.

On May 20 and May 28, 1984, [B] called respondent regarding the delivery of her settlement proceeds. Respondent did not explain to [B] what had happened. [B] demanded her settlement proceeds. Since respondent did not pay the funds to [B] by the deadline she set, she filed a complaint with the Office of Disciplinary Counsel.

On January 30, 1985, respondent forwarded to [B] a check for $1,490.49. On the date the hearing committee conducted its hearing,[2] respondent forwarded to [B] a check in the amount of $225 representing interest at a rate of approximately 18 percent on the $1,490.49 due [B] from April 16, 1984, to January 30, 1985.

With the advice of disciplinary counsel, respondent opened an escrow account at [G] Bank with an initial deposit made on December 14, 1984.

---

2. August 6, 1985.

The board adopts verbatim the findings of fact and conclusions of law in the excellent report of the hearing committee.

## III. DISCUSSION

Respondent's disciplinary infractions represent a unique combination of events which include his failure to pay a debt, his illness and hospitalization, and his lack of knowledge of what the Code of Professional Responsibility requires. However, if respondent had been knowledgeable of what the code requires, even had all of the other misfortunes outlined occurred, there would have been no violation. If respondent had an account clearly designated escrow, no execution on entrusted funds could have been successful. This respondent's violation of the code occurred not because of dishonesty, but because of lack of knowledge. Unfortunately, this is a recurring theme which must be remedied. Therefore, the board, through its new chief disciplinary counsel, will initiate a seminar program to better acquaint attorneys in the Commonwealth with what is required to comply with the Code of Professional Responsibility.

With regard to the particular violations in the case at hand, there is no question that the deposit of the insurance settlement check into respondent's personal account constitutes a commingling of funds in violation of D.R. 9-102(A). In addition, when the deposited funds were not promptly paid to the client, this violated D.R. 9-102(B)(4). Respondent did not reveal to his client what happened when [D] executed on the funds in his private account, and this lack of candor is sufficient to violate D.R. 1-102(A)(4). While respondent was certainly mistaken in the requirements of the code, he did not engage in illegal conduct involving moral turpitude

and, accordingly, did not violate D.R. 1-102(A)(3).

Respondent has been cooperative, and has done what has been required of him by disciplinary counsel to bring his business accounts in line with the requirements of the code.

The board finds the report and recommendation of the hearing committee to be excellent, and will recommend to the Supreme Court of Pennsylvania only a slight modification.

## IV. RECOMMENDATION

The board unanimously recommends to the Supreme Court of Pennsylvania that respondent receive a public censure, and submit all of his financial records for the direct review of assistant disciplinary counsel, to insure that all required bank accounts are in place and that respondent is knowledgeable regarding the requirements for use of those accounts. It is further recommended that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by respondent.

Mr. Padova did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this November 10, 1986, upon consideration of the recommendation of the Disciplinary Board dated August 15, 1986, it is ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing January 20, 1987, in Philadelphia. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.